Filed 9/3/24  P. v. Scott CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONNIE GENE SCOTT,<br><br>    Defendant and Appellant. | G063587<br><br>(Super. Ct. No. SWF1907834)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Frederick Paul Dickerson, III, John M. Davis, and Joshlyn R. Pulliam, Judges. Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel

Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

A jury found Ronnie Gene Scott guilty of four counts of committing a lewd act on a child younger than 14 years (Pen. Code, § 288, subd. (a))[1] and that he committed the offenses against more than one victim (§ 667.61, subd. (e)(4)). The victims were two sisters: Counts 1 through 3 concerned J.K., the younger sister (the younger girl), and count 4 concerned L.K., the elder (the older girl). On appeal, Scott challenges only the conviction on count 4 and the true finding on the multiple victim allegation. He claims five errors: (1) the admission of evidence of Scott molesting the victims' aunt in 1989 when she was 10 years old; (2) the denial of his motion to sever count 4 from counts 1–3; (3) the denial of his motion to dismiss count 4 under section 995; (4) insufficiency of the evidence to support a conviction on count 4; and (5) ineffective assistance of counsel when his trial attorney failed to object to evidence of a pretext phone call between Scott and the victims' father. Scott argues each claimed error was sufficiently prejudicial to warrant reversal of count 4 and the true finding. We disagree and affirm the judgment.

FACTS

I.

SCOTT'S HISTORY WITH THE VICTIMS' FAMILY

Scott's relationship with the victims' family began decades ago. Scott and the victims' paternal grandfather (the grandfather) grew up in

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

Michigan, where the two became friends and remained close into adulthood. The grandfather married and had a son (the father), who described Scott as "kind of like a family uncle." In the early 1990's, the grandfather moved the family to California, and Scott, then in his 30's, came with them.

When the father grew up, he married and had six children, including the younger girl and the older girl. Scott was a part of the children's lives "the whole time they were growing up."

By 2011 or 2012, Scott and the father's family were living on the same property, owned by the paternal grandmother and grandfather. The father's family lived there, on and off, for six or seven years, although the record does not reflect when they first moved in. On that property, the father's family lived in the main house, the grandparents lived in a smaller house in the back, and Scott lived in a trailer, also in the back. The property also had an outdoor playground, where the younger girl regularly played with Scott.

## II.

### THE 2019 OFFENSE AGAINST THE YOUNGER GIRL AND SUBSEQUENT INVESTIGATION

By 2019, the father's family had moved to another property and were living in their own home. One day that year, Scott visited the father's family at their home. That afternoon, as the father was barbecuing in the backyard, he looked through a window into the living room and saw the younger girl, then seven years old, and Scott together. They were in the living room, inside a makeshift play fort made of sheets and blankets. The younger girl was lying on her stomach, with Scott sitting next to her. She was wearing oversized shorts but no underwear. The father saw Scott rub the younger

girl's calf and thigh and hold a cell phone over her butt as he was massaging it. Scott lifted her shorts and looked at her butt and vaginal area.

The father texted his wife (the mother), who was in another room, and then approached Scott and told him it was time to leave. Before going, Scott whispered in the younger girl's ear.

After Scott left, the mother asked the younger girl if anyone had done anything inappropriate with her private parts. The younger girl said "yes," adding she was not supposed to tell anyone. She explained Scott liked to tickle and lick her vagina and that it had happened before. She said that this afternoon Scott wanted to take a "look" and rubbed her butt with his hand. The parents called the police and took the younger girl to the hospital.

A few days later, the father placed a pretext phone call to Scott, which was recorded by the police. The father asked Scott what happened the other day with the younger girl. Scott stated he rubbed her legs and back, "tried to play with her," and touched her a "little bit." He later said he touched and rubbed her butt and may have "accidentally" touched her vagina. Scott initially denied intentionally touching or licking her vagina but eventually admitted to rubbing and licking it. According to Scott, the younger girl was four when he first rubbed her vagina. Scott also admitted to rubbing the vaginas of the older girl and the father's cousin, C.W., who was the victims' aunt (the aunt).

As part of the investigation, the father and the police called the aunt to ask about Scott. The police interviewed the younger girl and the older girl.

## III.

### THE CHARGES AND TRIAL

An information charged Scott with four counts of a lewd act on a

4

child under the age of 14 (§ 288, subd. (a)) and alleged they were committed against more than one victim (§ 667.61, subd. (e)(4)). Count 1 concerned the 2019 offense against the younger girl, counts 2–3 concerned offenses against the younger girl when the family and Scott were living on the grandparents' property, and count 4 concerned an incident with the older girl.

Scott moved to set aside count 4 on the ground the magistrate judge (Judge Frederick Paul Dickerson, III) had held him to answer on the offense without reasonable or probable cause, under section 995. The trial court (Judge John M. Davis) denied the motion.

Scott later moved to sever count 4 from the remaining counts. The trial court (Judge Joshlyn R. Pulliam) denied the motion.

At trial, the father, the mother, the younger girl, the older girl, the aunt, and the investigating officer testified in the People's case-in-chief. The audio recording of the pretext call and the video recording of the police interview with the younger girl was played to the jury. For count 1, the father, mother, and younger girl (then age 10) testified to the 2019 offense (when she was seven), as we have summarized above.

For counts 2 and 3, the younger girl testified Scott had done similar things to her while he and the family were living on the grandparents' property. According to her, while she was in the backyard playground, "he [Scott] would normally just tell me to take off my shorts, and he would let me play on his phone as a reward for letting him do that." She testified, "It would be right next to the slide where he would lick my vagina at." Sometimes Scott would take her to his trailer and give her soda or chips. He would tell her to keep it a secret. When asked how often it occurred, the younger girl testified: "Every time he would see me, which was kind of like

5

daily, but sometimes he would be busy, so it wasn't like every day, but every time that I would see him, it would happen."

For count 4, the offense occurred in 2011 or 2012, when the older girl was seven or eight years old, respectively. She was 18 when she testified. The older girl had known Scott all her life and, at some point, had considered him her "best friend." According to her, "[w]henever we used to play, he would always spin us, like he would spin us around and tickle us and play with us in that way." Once while they were at the grandparents' property, Scott held her above the ground, holding onto her around her stomach, and "lifted up [her] pants and looked" at her butt. Scott's hand never touched her butt or vagina. While recounting the event, she added, "I also don't remember much of my childhood at all, so I don't know what else he has done."

On cross-examination, the older girl was asked about a conversation in 2015 with a social worker. The social worker asked her if anyone had touched her inappropriately, and the older girl replied that it hadn't happened. She further testified: "I'm not sure, but I also was at that point barely coming to terms with the fact that the person I grew up with was molesting me and my sister, so I wasn't very --I wasn't very aware of what was actually going on, and I did not want to admit it to myself nor anyone else."

A police investigator, who interviewed the older girl in 2020, testified the older girl said that, when she was five or six years old, Scott "moved her shorts and underwear . . . to get to her vagina."

Over defense objection, the aunt testified Scott had begun molesting her in 1989, when she was ten. Back then, she had considered him family. When Scott visited her family in the summer, he would molest her while she was in bed. Scott's "pattern" was to go to the bathroom, sneak into

6

her room, pull her blankets down, rub her vagina over her underwear, and smell his fingers when finished. According to the aunt, this happened at least every weekend in the summer months until she was thirteen.

The aunt further testified that when she was 13, she told her mother Scott was molesting her. Her mother never called the police, but after the aunt's disclosure, Scott moved to California with the grandparents. The aunt made "a lot" of comments about the molestation to her mother, but her mother didn't want to hear it and "always ha[d] excuses."

The defense did not call any witnesses. Defense counsel, however, cross-examined the father about stealing from Scott shortly after the 2019 offense. The father admitted stealing two blank checks from Scott, forging both checks to appear as though Scott had written them each for $2,500 to the father, and depositing them, because he felt his "kids deserved something." Both deposits were reversed once the bank discovered the fraud.

In closing, the prosecutor argued count 4 was satisfied by Scott touching any part of the older girl's body to sexually gratify himself: "Even moving her shorts, moving her underpants to look at it, that is a lewd act. He doesn't actually have to touch the vagina to be a lewd act. If he's moving her clothing and touching her while doing it to look at her vagina and sexually gratify himself, that's enough. But he also admitted that he touched her vagina as well. Was that a different occasion? We don't know. But even if you go just on what [the older girl] testified to, this still is a touching under [section] 288."

The jury found Scott guilty as charged and found true the multiple victim enhancement. Scott was sentenced to 15 years to life in prison for each count, for a total of 60 years to life. He timely appealed.

DISCUSSION

I.

EVIDENCE OF OTHER SEXUAL OFFENSES

Over defense objection, the trial court allowed the People to present evidence of Scott's sex offenses against the aunt, under Evidence Code section 1108. Scott argues the offenses against the aunt lacked probative value because they were so dissimilar to the alleged offenses against the two girls. He further contends the offenses against the aunt were too inflammatory and remote in time, should have been deemed unduly prejudicial, and thus should have been excluded under Evidence Code section 352. We conclude the court did not err.

"When a defendant is accused of a sex offense, Evidence Code section 1108 permits the court to admit evidence of the defendant's commission of other sex offenses, thus allowing the jury to learn of the defendant's possible disposition to commit sex crimes. [Citation.] The court has discretion under Evidence Code section 352 to exclude the evidence if it is unduly prejudicial. [Citation.] The evidence is *presumed admissible* and is to be *excluded only if its prejudicial effect substantially outweighs its probative value* in showing the defendant's disposition to commit the charged sex offense or other relevant matters. [Citation.] The court's ruling admitting the evidence is reviewed for abuse of discretion." (*People v. Cordova* (2015) 62 Cal.4th 104, 132, italics added (*Cordova*).)

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) In performing this analysis, the

8

court generally considers five factors: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.) "A trial court balances this first factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors." (*Ibid.*)

*A. Probative Value*

Although a court may consider the dissimilarities between the uncharged acts and the charged acts, "dissimilarity alone does not compel exclusion of the evidence. '"[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in [Evidence Code] section 1108."'" (*Cordova, supra,* 62 Cal.4th at p. 133.) Any dissimilarities between the acts go to their weight, not their admissibility. (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 967.)

Here, the offenses are all sex offenses under Evidence Code section 1108 and thus have probative value. (*Cordova*, *supra*, 62 Cal.4th at

9

p. 132.) Indeed, the offense committed against the aunt bore multiple similarities to those against the two girls so as to be considered highly probative on the question of whether Scott committed the charged offenses. In all offenses, Scott targeted girls under the age of 14 within the same family. He established a relationship of trust with the family, acting as if he were a "family uncle" or "best friend," and befriended all three girls. Scott focused on the girls' crotch area—looking at their butt or vagina, or rubbing or licking their vaginas. In sum, the offenses were very similar in nature and thus had great probative value.

## B. *Prejudicial and Time-Consuming Effects*

According to Scott, the alleged offenses against the aunt were more inflammatory than the charged offenses because the abuse against the aunt endured for three years every summer weekend. But evidence of the alleged abuse inflicted on the younger girl is equal to or exceeds that of the aunt. Scott licked the younger girl's vagina; he did not simply rub it as he had done with the aunt. And according to the younger girl, Scott would do it every time he saw her, "which was kind of like daily."

Scott also argues the offenses against the aunt were too remote in time. But "[n]o specific time limit exists as to when an uncharged crime is so remote as to be excludable." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1099.) Courts have admitted evidence of other offenses dating back decades. (See e.g., *People v. Robertson* (2012) 208 Cal.App.4th 965, 992–994, [other sex crime committed 34 years before charged crime not too remote]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977–978, 991–992, [victims were defendant's sister and niece; evidence of continuous molestation of second sister between 22 or 23 years to 29 or 30 years before charged crimes, and of a third sister 21 or 22 years before the charged crimes, not too remote].)

10

Here, the offenses against the aunt were committed between 1989 and 1991. The offense against the older girl was in 2011 or 2012. And the most recent offense against the younger girl was in 2019. The time between these offenses was at most 30 years (measuring from the first to last offense) and at least 20 years (from the last offense against the aunt to the offense against the older girl). Given the probative value in establishing a pattern of molestation by Scott over a 30-year period, we cannot say the offenses against the aunt were too remote.

Finally, Scott argues evidence of the offenses against the aunt was prejudicial because of the risk the jury would improperly punish Scott for those offenses. But in our review of the record, we find no evidence the jury sought to punish Scott for the offenses against the aunt. As noted by the People, the jury was instructed it could, but was not required to, consider the alleged offenses against the aunt for the purpose of deciding whether Scott "was disposed or inclined to commit sexual offenses," such as those he was alleged to have committed against the two girls. The jury was further instructed not to consider the evidence for any other purpose. (CALCRIM No. 1191A.) Where, as here, "[t]he jury was given an effective instruction by the trial court to consider the evidence only for proper limited purposes, . . . we must presume the jury adhered to the admonitions." (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1277.)

In sum, we cannot find the trial court abused its discretion by admitting the evidence of sex offenses under Evidence Code section 1108.

## II.

### MOTION TO SEVER

Scott contends the trial court abused its discretion in denying his motion to sever count 4 under section 954. He does not argue count 4 fails to

11

meet the statutory requirements for joinder with counts 1–3; rather, he claims the court was required "in the interests of justice and for good cause shown" to grant the motion to sever. We conclude the denial was not an abuse of discretion.

As relevant here, section 954 permits joinder of "two or more different offenses of the same class of crimes or offenses." (§ 954.) The Legislature enacted the statute to avoid "'the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.'" (*People v. Soper* (2009) 45 Cal.4th 759, 772 (*Soper*).) For this reason, "joinder of charged offenses 'is the course of action preferred by the law.'" (*Ibid.*)

Here, the charges were identical: All counts alleged Scott committed a lewd act on a child under the age of 14 (§ 288, subd. (a)). We thus conclude the counts were properly joined under section 954. (*People v. Westerfield* (2019) 6 Cal.5th 632, 686 (*Westerfield*) [whether offenses properly joined under section 954 is a question of law and is subject to independent appellate review].)

"'Nonetheless, a trial court has discretion to sever properly joined charges in the interest of justice and for good cause.'" (*Westerfield, supra,* 6 Cal.5th at p. 688.) "'When exercising its discretion, the court must balance the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.'" (*Ibid.*) We review a ruling on a motion to sever based on "a determination as to whether separation is required in the interests of justice . . . for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 188.)

The defendant bears the burden of showing the trial court abused its discretion in denying a motion to sever and """must make a clear showing

of prejudice"'"'" by showing "the denial 'exceeded the bounds of reason.'" (*Westerfield, supra,* 6 Cal.5th at p. 689.) This showing must be stronger "'"than would be necessary to exclude other-crimes evidence in a severed trial"'" under Evidence Code section 1101. (*Soper, supra,* 45 Cal.4th at p. 774.)

We evaluate these claims based on "'the showings made and the facts known by the trial court'" when it ruled. (*Westerfield, supra,* 6 Cal.5th at p. 689.) We "'consider four factors: (1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges; and (4) whether any charge carries the death penalty or the joinder of charges converts the matter into a capital case.'" (*Ibid.*) And we balance the potential prejudice to the defendant from a joint trial (second through fourth factors) against the benefits to the state (first factor). (*Ibid.*) A finding of cross-admissibility on "'"[the first] factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges."'" (*Ibid.*)

In this case, there is no dispute the two sets of offenses were cross-admissible under Evidence Code section 1108, and this showing alone is sufficient to justify the trial court's denial of the motion to sever. (*Westerfield, supra,* 6 Cal.5th at p. 689.)

Counts 1–3 were not "unusually likely to inflame the jury" against Scott on count 4. (*Westerfield, supra,* 6 Cal.5th at p. 689.) All charges involved a child under 14 years of age and thus were equally serious offenses. Although the offense against the younger girl could be viewed as more

13

inflammatory because Scott licked her vagina on a regular basis, it would be reasonable to conclude both offenses would be equally devastating to a child. Indeed, the older girl testified that in 2015 she was "barely coming to terms with the fact that the person I grew up with was molesting [her] and [her] sister . . . and [she] did not want to admit it to [her]self nor anyone else." This testimony suggests the older girl suffered profound emotional injury, notwithstanding her lack of memory on the extent of abuse she endured.

Finally, count 4 was not a weaker case than counts 1–3, such that "'the spillover effect of aggregate evidence might alter the outcome of some or all of the charges.'" (*Westerfield, supra,* 6 Cal.5th at p. 689.) When assessing the relative strengths and weaknesses of the cases, we are mindful that "the benefits of joinder are not outweighed—and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Soper, supra,* 45 Cal.4th at p. 781.) In both cases, the two girls described how Scott touched them inappropriately when they were young. The trial court thus could reasonably find the relative strengths and weaknesses of the cases did not weigh in favor of severance.

Finally, for all the reasons discussed above, we reject Scott's contention that, even if the trial court's severance ruling was correct at the time, the severance resulted in "'gross unfairness' amounting to a denial of defendant's constitutional right to fair trial or due process of law." (*People v. Merriman* (2014) 60 Cal.4th 1, 46.)

### III.

#### MOTION TO SET ASIDE COUNT 4

Scott contends the trial court prejudicially erred by denying his pretrial motion to set aside count 4 under section 995. According to Scott, the

14

magistrate judge's order holding him to answer on count 4 was improperly based solely on his extrajudicial statements from the pretext call—a violation of the corpus delicti rule, which "requires some evidence that a crime occurred, independent of the defendant's own statements." (*People v. Ledesma* (2006) 39 Cal.4th 641, 721 (*Ledesma*).) We need not decide whether the court erred, however, because we conclude Scott cannot show resulting prejudice.

Under section 995, a defendant may move to set aside an information "based on the sufficiency of the record made before the magistrate at the preliminary hearing." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071–1072); § 995, subd. (a)(1)(B).) On appeal from a denial of a section 995 motion, a defendant must show the denial was erroneous and prejudicial. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 140.) The defendant, however, cannot show prejudice if he or she was convicted "after a trial in which . . . the prosecution presented sufficient evidence as to those matters." (*Ibid.*)

As we explain below in the next section, there was substantial evidence at trial from which the jury could find Scott guilty on count 4. Given this conclusion, we conclude Scott cannot prevail on his section 995 claim.

IV.

SUFFICIENCY OF THE EVIDENCE ON COUNT 4

To challenge the sufficiency of the evidence on count 4, Scott again relies on the corpus delicti rule that there must be "some evidence that a crime occurred, independent of the defendant's own statements." (*Ledesma, supra*, 39 Cal.4th at p. 721.) Scott claims that, other than his own statements, no evidence was presented at trial of him touching the older girl inappropriately. Not so.

15

On a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We "'neither reweigh[ ] evidence nor reevaluate[ ] a witness's credibility.'" (*Ibid.*) Our power "'*begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.'" (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1007.)

With an exception not applicable here, it is a felony for "a person [to] willfully and lewdly commit[ ] any lewd or lascivious act . . . *upon or with the body, or any part or member thereof*, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a), italics added.) "'*Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citation.] By focusing on the defendant's intent to sexually exploit a child rather than on the nature of the defendant's offending act, section 288 'assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire.'" (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

Here, even without Scott's statements, there was substantial evidence from which the jury could find Scott guilty on count 4. The older girl testified that when she was a young child Scott spun her around, lifted her shorts, looked at her butt, and commented that she wasn't wearing

16

underwear. This touching is enough to satisfy the touching requirement in section 288: "Nothing in [the] language [of the statute] restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." (*People v. Martinez* (1995) 11 Cal.4th 434, 442.) And although the older girl could not recall at trial whether Scott had touched her vagina, the police investigator testified that the older girl had previously stated Scott once moved her shorts and underwear to get to her vagina. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 44 ["Prior inconsistent statements admitted under Evidence Code section 1235 may be considered for their truth as well as for impeachment"].) There was also testimony of Scott molesting other family members, both before and after this incident with the older girl. From this evidence, the jury could reasonably infer that Scott's touching of the older girl—by spinning her and moving her shorts—was done "with the intent of arousing, appealing to, or gratifying [his] lust, passions, or sexual desires." (§ 288, subd. (a).)

## V.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Before trial, the People moved to admit evidence of the pretext call. When the trial court asked for his position on the issue, Scott's trial counsel replied, "I would just submit to the [c]ourt." The evidence was admitted. On appeal, Scott argues he received ineffective assistance because his counsel failed to object to that evidence. We are unpersuaded.

As an initial matter, to the extent Scott argues his statements during the pretext call should have been excluded because they were involuntary, the argument is waived because it was not raised below. (*People v. Williams* (2010) 49 Cal.4th 405, 435.)

17

As for the claim of ineffective assistance of counsel, to prevail a defendant must show deficient performance by counsel and resulting prejudice. (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*).) Counsel's performance is deficient if it falls "'below an objective standard of reasonableness . . . under prevailing professional norms.'" (*Ibid.*) Resulting prejudice is shown when "'there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" (*People v. Staten* (2000) 24 Cal.4th 434, 451 (*Staten*).)

Counsel's "'[f]ailure to object rarely constitutes constitutionally ineffective legal representation.'" (*People v. Huggins* (2006) 38 Cal.4th 175, 206.) This is because we afford "'great deference to counsel's tactical decisions'" and "will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had 'no rational tactical purpose' for an action or omission." (*Mikel*, *supra*, 2 Cal.5th at p. 198.) "'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.'" (*Huggins*, at p. 206.)

In this case, we cannot conclude Scott's trial counsel had no rational tactical purpose for not objecting. Scott does not argue—and the record does not show—he asked his counsel for an explanation, but to no avail.

Nor can we rule out the possibility the decision not to object was tactical. In admitting evidence of the pretext call, the trial court found it did

not present any issues under *Miranda v. Arizona* (1966) 384 U.S. 436 or *Crawford v. Washington* (2004) 541 U.S. 36. The court stated that if counsel later believed parts of the pretext call should be excluded, "we can readdress it at that time." A week later, the court granted Scott's in limine motion to exclude his postarrest statements during a police interview, including statements that he rubbed the younger girl's back, legs, butt, and vagina. The court found Scott's *Miranda* waiver was *voluntary* but not knowing or intelligent. Given these evidentiary rulings, Scott's trial counsel could have reasonably believed a later objection to the voluntariness of the pretext call would have been overruled. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].)

Even if his trial counsel erred by not objecting to the pretext call evidence, Scott has not shown resulting prejudice. The jury heard testimony from the two victims, the father, the mother, the aunt, and the investigating officer which together revealed Scott's decades-long history of child molestation and inappropriate touching of the older girl. (See *Strickland v. Washington* (1984) 466 U.S. 668, 695 [in assessing prejudice, court must consider totality of the evidence].) Thus, even if the pretext call had been excluded, it is not reasonably probable the result would have been different. (*Staten, supra*, 24 Cal.4th at p. 451.) For these reasons, Scott's claim of ineffective assistance of counsel fails.

19

## DISPOSITION

The judgment is affirmed.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.